## ANONYMOUS.

| | |
|---|---|
| 24 | 19 |
| 54 | 241 |
| 24 | 19 |
| 56 | 426 |
| 24 | 19 |
| 62 | 27 |

1. A marriage will not be annulled for impotence. The Court of Chancery is restricted in its jurisdiction in suits for divorce, to the legislation on the subject, and in suits for nullity of marriage to cases within the inherent and undoubted jurisdiction of equity.

2. This court will, outside of its statutory jurisdiction, annul a contract of marriage, only where the contract is void; not where it is voidable merely.

THE CHANCELLOR.

The bill in this case is filed by a wife to obtain a divorce from her husband, *a vinculo matrimonii*, on the ground of impotence. It is alleged that the physical incapacity complained of existed at the time of the marriage, and has continued ever since, and is incurable.

Impotence is not one of the causes for which a divorce may be decreed under our statute, and if this court has power to grant the present application, it must be by virtue of its jurisdiction, apart from the acts of the legislature.

The grant by the legislature to this court, by the act of 1794, of jurisdiction over suits for divorce in the cases therein specified, was a grant of jurisdiction where none existed before; and this court regarded its powers over such causes as limited by that act, and its supplements, up to the year 1870, when the case of *McClurg* v. *Terry*, 6 C. E. Green 226, was decided. I have been able to find no instance, up to that time, in which the court held, or seemed to consider, that it was at liberty to exceed those bounds.

In *Yule* v. *Yule*, 2 Stockt. 144, decided in 1854, Chancellor Williamson said : " The jurisdiction of this court, in cases of divorce and alimony, is prescribed by statute. The third, fourth, and eighth sections of the statute specify the grounds upon which the court may assume jurisdiction." It cannot be doubted that from time to time, during all the years that intervened between 1794 and 1870, applications were made for divorces or decrees of nullity, on grounds other than those

specified in the statute. It is believed that they were invariably unsuccessful, owing to the reluctance of the court to transcend the authority of the enactments referred to, or to assume or exercise jurisdiction beyond those bounds. Up to the time of the adoption of the present constitution, the legislature granted divorces and annulled marriages at will, and although, from 1794 to that time, 1844, divorces and declarations of nullity were obtainable by act of the legislature, for causes other than those specified in the act of 1794, this court confined itself, in matrimonial causes, to the limits of the act.

The present constitution deprived the legislature of the power to divorce. From this, coupled with the fact that this court then had jurisdiction over the subject of divorce by the statutes, the conclusion was deduced by the distinguished jurist by whom McClurg *v.* Terry was decided, that powers of divorce and annulling marriages beyond the bounds of the statutes may well, in the public interest, be assumed by this court. And yet it is worthy of observation that, notwithstanding the liberality of construction which he expressly favored, as appears from the decision in the case last referred to, he was not inclined, in suits for dissolution of marriage not within the statutes, to pass the bounds of the acknowledged jurisdiction of the Court of Chancery over cases of mistake, fraud, duress, and defect of capacity to contract.

In McClurg *v.* Terry, a decree of nullity was granted on the ground that no marriage contract was in fact intended by the parties ; that it was a marriage in jest. In *Selah* v. *Selah*, 8 *C. E. Green* 185, decided in May Term, 1872, Chancellor Zabriskie says : " In the case of McClurg *v.* Terry it was held that this court has the power not only to dissolve legal contracts, which is the proper meaning of the word divorce as used in the constitution and statutes on the subject, but also to declare contracts of marriage void when entered into under circumstances that make such contracts invalid. * * * * Nor does the decision in that case hold that this court

has power to dissolve a marriage actually entered into, but only that it has power to declare that such contract was never legally made."

And in Carris v. Carris, decided by him in August, 1872, where the bill filed by the husband prayed a decree of nullity on the ground of ante-nuptial incontinence on the part of the wife with a man other than the complainant, her consequent pregnancy at the time of the marriage, her being delivered, about two months after marriage, of a full-grown child, and her concealment from the complainant of the fact of her incontinence and pregnancy, a decree of nullity was denied. The decree in this last case was reversed in the Court of Errors and Appeals, and a decree ordered annulling the marriage contract on the ground of fraud.

Hitherto the powers of this court over the subject of divorce have not been extended beyond the limits of the statutes, and the power to decree nullity has not exceeded the inherent jurisdiction of equity to vacate contracts for fraud, mistake, duress, or want of mental capacity or intention to contract.

Under the statute of the State of New York, which authorized the Court of Chancery to grant divorces *a vinculo*, only for the cause of adultery,—notwithstanding the views of Chancellor Kent, as expressed in his elaborate opinion in *Wightman v. Wightman*, 4 *Johns. Ch.* 343, that in the absence of spiritual courts, cognizance of matrimonial causes belongs to the existing tribunals, and that the legislature, by granting to the Court of Chancery sole jurisdiction over the marriage contract in certain specified cases, has pointed to that court as the proper organ of such a jurisdiction, and for want of ecclesiastical courts, the jurisdiction was necessarily cast upon the Court of Chancery,—the Court of Chancery confined itself, in matrimonial causes, to the limits of equity jurisdiction in annulling contracts.

In the case last referred to, Wightman v. Wightman, the marriage contract was annulled for want of mental capacity to contract in one of the parties. In *Ferlat* v. *Gojon, Hopk.*

478, it was annulled for fraud.   In *Burtis* v. *Burtis, Hopk.* 557, a decree of nullity asked for on the ground of impotence, was refused for want of jurisdiction.   Of the former cases, Chancellor Sandford, by whom the latter of them was decided, says, in *Burtis v.* Burtis : " Two decrees annulling marriages have been made by this court, in cases not comprehended by our statute concerning divorces.   In the case of Wightman *v.* Wightman, one of the parties was a lunatic, and in the recent case of Ferlat *v.* Gojon, the marriage had been procured by an atrocious fraud.   These marriages were clearly void, and this court pronounced the sentence of nullity.   If these two decrees are denominated divorces, they do not arrogate to this court any general power of divorce in cases not prescribed by our statutes.   The power of this court to vacate contracts obtained by fraud is an unquestioned branch of its jurisdiction ; a gross fraud in obtaining a marriage seemed to fall within this jurisdiction, and the court adjudged such a marriage void.   But the cases in which this court can annul marriages, in virtue of its power as a court of equity, must be few and very peculiar ; and they must appertain to the jurisdiction of equity."

Nor was the view of Chancellor Kent as to jurisdiction from necessity, adopted by the Court of Chancery in New York.

In *Perry* v. *Perry*, 2 *Paige* 501, Chancellor Walworth said : " Where the right claimed as a common law right, is of such a nature that it cannot be enjoyed in any manner except by the direct interference of a judicial tribunal to give the remedy ; if no tribunal has been organized by the law-making power for that purpose, we may fairly conclude the right does not exist.   But whenever the legislature distinctly gives the right without creating or appointing any particular tribunal to administer the remedy, it is fairly to be inferred that they intended to vest that power in some of the existing tribunals of the country.   As the right to dissolve a marriage *de facto*, which was merely voidable, could only be exercised by the aid of the ecclesiastical court in England, and as no

such court was ever organized here, and no other court exercised any such jurisdiction for more than one hundred years, it may reasonbly be presumed the right did not exist, and that this part of the law of England was never in existence in this colony. Such a jurisdiction, therefore, cannot now be exercised here by any court, without the direct or implied sanction of the legislature."

But will not the court, by virtue of its power as a court of equity over contracts, take jurisdiction of cases of application for divorce or decree of nullity for corporal imbecility, and grant the desired release on the ground of fraud in the contract, for physical impotence renders a person unfit to enter into the marriage contract?

It is insisted that in such case, where the incapacity existed at the time of the marriage, the court ought to consider the contract as made *in fraudem legis.*

Incompetency at the time of marriage to perform the duties which the marriage contract enjoins, will, if it continues and be incurable, render the marriage invalid. *Greenstreet* v *Cumyns*, 2 *Phill.* 10, but such marriage is voidable only.

Impotence, it is true, may be regarded as a species of fraud in law, but it is to be borne in mind, that in annulling marriages for causes not specified in the statutes giving it jurisdiction over matrimonial causes, the Court of Chancery has confined itself to such marriages as were not *de facto* marriages. The distinction is between marriages void because there is no contract, and those which are voidable merely. Over the former this court has jurisdiction, but not over the latter. By the English law, the canonical disabilities, such as consanguinity, affinity, and certain corporal infirmities, only make the marriage voidable, and not *ipso facto* void until sentence of nullity be obtained; and such marriages are esteemed valid unto all civil purposes until such sentence of nullity is actually declared during the lifetime of the parties. *Elliot* v. *Gurr*, 2 *Phill.* 16. Where a marriage has taken place, nothing short of death or the judicial decree of some court confessedly competent to the case, can dissolve the mar-

riage tie.  *Williamson* v. *Parisien*, 1 *Johns. Ch.* 392 ; *Zule* v. *Zule, Saxt.* 96.

The whole subject is well summed up by Bishop (*Marriage and Divorce, Vol. II.*, § 291) : "In the United States we have never had ecclesiastical courts, and before other tribunals can take cognizance of causes ecclesiastical, they must receive statutory authority ; therefore, a court of equity cannot avoid a marriage for impotence, or for any other like canonical defect.  But in some cases of void marriages, our equity courts interfere under their ordinary powers.  Thus they have inherent jurisdiction over all questions of fraud, mistake, duress, and lunacy ; and where a marriage is alleged to be void by reason of one of these impediments, they ordinarily entertain the suit for having it so declared.  True, in England this jurisdiction would not be entertained in equity, because, formerly, there was an express jurisdiction in the ecclesiastical courts, and now there is, in the divorce courts. But in the absence of the express jurisdiction with us, it is the general American doctrine that it may be properly taken up by the equity tribunals ; being inherent in the equity court, and slumbering, when it does, out of deference to the other more appropriate judicatory."

The legislature of this state has had this subject of voidable marriages under consideration, and has passed upon it. It has granted to this court power to decree a divorce where the parties are within the prohibited degrees.  It gave the power to dissolve a *de facto* marriage in that case, but guarded the divorce from the consequences which would follow a decree of nullity, the bastardizing of the issue.  It has not authorized a dissolution of the marriage tie for impotence. It must be presumed to have withheld the power of divorce for that cause.  Whether, therefore, the present application be considered as an application for divorce according to the special prayer of the bill, or for a decree of nullity under the general prayer, it must be denied.

As was well said by the court in Burtis *v.* Burtis : " The cause for which this court is now asked to dissolve a mar-

riage, is corporal impotence on the part of the husband. This fact is not a cause of divorce by our statutes; and it is impossible to yield to this suit, without adopting the law of England or some other country, concerning divorces, as the law of this state. If a divorce can be granted for this cause, the whole catalogue of causes allowed by the law of England may be equally adopted; the acts of the legislature and the policy of the state respecting divorces would be superseded by the doctrines of a foreign code; and a power hitherto unknown in this state would be exercised."

If, in the opinion of the legislature, sound public policy demands that the jurisdiction of this court be extended to such causes as this, it will so enact.

The bill is dismissed.